LEWIS GRADY *v.* APPALACHIAN ELECTRIC POWER COMPANY

(CC 680)

Submitted February 8, 1944. Decided February 29, 1944.

*G. S. Millhouse* and *Albert Good,* for plaintiff.
*Campbell, McClintic & James,* for defendant.

Fox, Judge:

The plaintiff instituted his action of assumpsit against the defendant, in the Circuit Court of Kanawha County, seeking to recover damages alleged to be due under contract, and in said action filed his second amended declaration. The defendant demurred to said declaration, assigning four separate grounds therefor. The circuit court sustained said demurrer in part and overruled it in part, and on its own motion certified its action to this Court.

Plaintiff seems to rely upon two theories for recovery. One, based on alleged representations and understandings as to the custom of the defendant concerning the treatment of injured employees upon which, he says, he relied, and which prompted him to continue work; and, second, an alleged direct verbal promise by a duly authorized representative of the defendant to pay to the plaintiff a specific sum per month as long as he should live, followed by a part performance of such promise, and subsequent failure to comply therewith. The fact that the allegations based on the first theory, even if insufficient to sustain the same, tend to sustain it under the second theory, calls for somewhat extended quotations therefrom.

The declaration alleges that the plaintiff was employed by the defendant at intervals for a number of years up to and including November 30, 1930; that while in such em-

ployment, and acting in the course thereof, he suffered an injury on said date; that later, on September 29, 1937, and while acting in the course of such employment, he received another injury; that following this last-mentioned injury, and by reason of his weakened physical condition resulting therefrom, the defendant gave the plaintiff work of a limited or light nature; that while engaged in such work he was again injured on January 9, 1939, which injury he reported to defendant's safety director, who requested him to continue his work and endeavor to make it a non-disabling injury; that he continued to work until January 20, 1939, when, by reason of his injuries, he ceased to work and, in accordance with the custom of the defendant, was paid wages for three months from the date he ceased to work; that he was treated for his injury by a physician, who referred him to the Workmen's Compensation Department; that he was examined by a representative of that department, a report of that examination was sent to the defendant, and its attention called to its failure to report the injury. The declaration then goes on to allege:

> "that during the years of his employment, and especially during the times that he was disabled the defendant company through its authorized representative had represented to the plaintiff that because of his injury in the services of the company and his resulting weaknesses and disabilities, the company would provide for him for the rest of his life in the same manner it was providing for other of its employees who had been employed at certain of the defendant's plants named by such representative and who had become injured while in the employ of the company: That the defendant company had in fact made similar promises to other of its employees and was performing such promise, as was indicated by such representative, by allowing such employees to remain with the company at some special or limited work until such time as they become totally disabled, after which said employees ceased working and were paid their regu-

lar wages for a period of three months, and thereafter, for the remainder of their lives were paid monthly sums amounting in each case to fifty per cent (50%) or more of the wages regularly paid such employees while working for the company; that at the time such promise was made to the plaintiff and such references were made to other cases in which the defendant was providing for injured employees, plaintiff knew of specific cases wherein the defendant was *saw* taking care of injured employees and knew the amounts of the monthly sums of money being paid to such employees after they ceased working for the company, and that such promise was made in the light thereof and connoted to the defendant and to the plaintiff a definite undertaking on the part of the defendant to provide for the plaintiff for the rest of his life in the same manner, and to the same extent, that it was taking care of the others of its employees to whom similar promises had been made; that at the times such promise was made to the plaintiff, the defendant also knew that the plaintiff was then earning, to wit, the sum of one hundred and twenty-five dollars ($125) per month, and knew the station in life of the plaintiff and approximately what would be his reasonable needs for the remained of his life; and the plaintiff relief upon said promise and continued in the employment of the defendant company; * * *."

The portion of the declaration quoted above sets up the plaintiff's claim to recovery on the theory first stated. In support of his second theory the declaration alleges:

"that on, to wit, the 6th day of July, 1939, plaintiff's wife, at his request and direction, and in his behalf and with full knowledge of the aforesaid promise of the defendant to provide for the plaintiff for the rest of his life, went to the defendant for the purpose of obtaining advice and relief in their destitute condition and was referred to Mr. Brendl, an authorized representative of the defendant; and that Mr. Brendl, acting on behalf of the defendant company, when asked by Mrs. *Loui*s Grady, acting for her husband, if her husband would receive Wo*r*man's Compensation as a

result of his injury of January 9, 1939, to his back, which was responsible for the then present disability and which had aggravated the original disabilities of November 28, 1937, that Mr. Brendl wifffully and knowingly misrepresented that the Workman's Compensation Department would not pay any more money for the injury to his back and had refused to do so, but Mr. Brendl represented and promised, on behalf of the defendant company that the defendant would take care of Mr. Grady, the plaintiff, for the rest of his life as it had promised to do for other disabled employees of the company who were loyal and who had served the company, and further represented and promised that the defendant company would pay Louis Grady seventy dollars ($70.00) a month for for life, and that he would receive his pay check from the company on the 5th and 20th of each month; that the plaintiff had prior to this time sought and accepted the advice of the defendant company, and had reason to put faith therein, and he was therefore misled to believe that he was not entitled to receive further Workman's Compensation, and that he had been refused payment by the Workman's Compensation Department for his disabling injury of January 9, 1939, and that to his determent he did not press his claim which in reality was available to him and which he had fraudulently been led to believe did not exist; that the plaintiff believed that defendant company was not making good its promise which they had made to him in the past and which was in part due to him remaining with the defendant, and he entered into and accepted this offer of the defendant company to pay him seventy dollars ($70.00) a month for life, and he thereafter accepted checks from the company for thirty-five dollars ($35.00) paid on the 5th and 20th of each month; * * *."

The declaration then avers, in substance, that thereafter the defendant required the plaintiff to work at a limited occupation at a wage greater in amount than the seventy dollars per month aforesaid, but only for such time as he could perform light work; that he did such

work without waiving his right to the payments agreed upon under the contract of July 6, 1939; that he continued to work until January 30, 1940, when he became sick and disabled, and was then paid his full wages for a period of three-months thereafter; and that later, when the defendant company was requested to comply with its agreement to pay him seventy dollars per month, it refused to do so, and also refused to pay him any other sum of money under their alleged agreement to provide for him for his life.

The demurrer to the declaration filed by the defendant sets up four grounds therefor, to-wit:

"(1)    The said amended declaration does not allege the making and existence of a contract between the plaintiff and defendant;

"(2)    It does not appear from the allegations of said amended declaration that the 'Mr. Brendl' referred to had authority to make on behalf of said defendant any contract or promise to pay plaintiff any amount of money per month during the remainder of plaintiff's life;

"(3)    The said amended declaration does not allege sufficient consideration to support any alleged contract made by and between the plaintiff and defendant; and

"(4)    Any alleged contract between the plaintiff and defendant, attempting to exempt either from the burden of The Workmen's Compensation Law, or to waive as to either the benefits thereof, would be void under the provisions of West Virginia Code, Ch. 23, Art. 2, Sec. 7."

The circuit court sustained the demurrer as to point 1, and overruled the same as to points 2, 3 and 4. It appears from the order entered that the court held the declaration defective "in that it lacks the averment of the existence of a contract with that degree of definiteness and certainty

which is required of contractual obligations." The court's action on the other points of the demurrer was taken without comment as to the reasons therefor. Counsel are not in accord as to the meaning of the court's order. We think it clear that what the circuit court held was (1) that Code, 23-2-7, should not be permitted to invalidate the contract alleged in the declaration; (2) that the declaration alleged a valid consideration for such contract; and, (3) sufficiently averred the authority of the defendant's representative to make the representations and promises alleged. The court then held that, notwithstanding the sufficiency of the declaration in these respects, it failed to allege a definite agreement or contract upon which recovery could be had.

We will first dispose of the fourth point of the demurrer, based upon the contention the contract alleged in the declaration was in contravention of the provisions of Code, 23-2-7. That provision is, "No employer or employee shall exempt himself from the burden or waive the benefits of this chapter by any contract, agreement, rule, or regulation, and any such contract, agreement, rule, or regulation shall be pro tanto void." We think this provision was only meant to prevent agreements by which an employer could obtain a settlement for an injury at a figure less than that which he would be required to pay through an application of the compensation laws, and that an employee could not be bound by a waiver of benefits he was entitled to receive under compensation laws. It was given this construction in *Walker v. State Compensation Commissioner,* 107 W. Va. 531, 149 S. E. 604. And the general principle was upheld in the *Alaska Packers Association v. Industrial Accident Commission,* 294 U. S. 532, 55 S. Ct. 518, 79 L. Ed. 1044, and in *Duncan v. Thompson, Trustee,* 315 U. S. 1, 62 S. Ct. 422, 86 L. Ed. 575. The provision was intended for the protection of the employee, so that notwithstanding any agreement he might make, he would still be entitled to assert his rights under the compensation laws of the State. The employee was in-

cluded in the prohibition of the statute for the reason that it takes two persons to make a contract. We do not think it was intended to prevent an employer from making special provisions for an injured employee beyond those which the employee might receive under the compensation statutes. It is well known that many employers of labor, who are subscribers to the compensation fund and regularly pay into the same, provide pension funds and other benefits for their employees. We do not believe the statute in question should be so construed as to discourage or make unlawful such practices.

The next point to be considered is whether the declaration definitely states a cause of action. This requires the separation of the declaration into two parts, the first being the allegations relating to what transpired prior to July 6, 1939, when, according to such allegations, the wife of the plaintiff, acting for him, had an agreement with a representative of the defendant. When we examine this part of the declaration, being that part first quoted above, we reach the conclusion that no definite agreement is alleged. It does nothing more than allege certain indefinite promises and understandings, references to what had been the conduct of the company with relation to other employees, and plaintiff's knowledge thereof, and, in our opinion affords no basis for any measure of damages, or any definite standard by which compensation could be awarded for any violation of, or departure from, customs pursued, or representations and promises made. The plaintiff cites much authority for the proposition that the law does not favor destruction of contracts for uncertainty, where from the allegation in respect thereof it is possible or feasible to arrive at the intention of the parties; but, applying this principle to the allegations in question, we are still unable, in this part of the declaration, to find any basis for recovery; and if the declaration contained nothing more, we would be impelled to affirm the action of the circuit court in holding that it did not state an agreement with that definiteness which would justify a

court in permitting recovery of damages for a violation thereof.

But we think the second part of the declaration, as quoted above, does state a definite promise. As a reading of that part of the declaration will disclose, it is alleged that the wife of the plaintiff went to the defendant for the purpose of obtaining advice and relief, and was referred to a Mr. Brendl, averred to be an authorized representative of the defendant; and that Brendl, acting for the defendant, was asked by Mrs. Grady if her husband would receive Workmen's Compensation as a result of his injury of January 9, 1939, and was told that the Compensation Department would not pay any more money for said injury, and had refused to do so. The declaration then alleges, "but Mr. Brendl represented and promised, on behalf of the defendant company that the defendant would take care of Mr. Grady, the plaintiff, for the rest of his life as it had promised to do for other disabled employees of the company who were loyal and who had served the company, * * *." Up to this point we think the promise is just as indefinite as that alleged in the first part of the declaration, which we have held to be insufficient. But it goes further and avers, "and further represented and promised that the defendant company would pay Louis Grady seventy dollars ($70.00) a month for life, and that he would receive his pay check from the company on the 5th and 20th of each month; * * *." And it then avers that, having confidence in the representations and promises made, he accepted this proposition and did not press his claim for compensation, and, in fact, he was paid the sum promised over a period of time. We think this is a clear and definite allegation of a promise to pay to the plaintiff a definite sum for a definite period of time, and that on this theory the declaration is sufficient to permit the plaintiff to go to proof in a trial before a jury.

While the declaration is definite in the particulars above set out, two other questions remain: First, whether the

declaration sufficiently alleges the authority of Mr. Brendl to make the promise alleged. It will be noted that the declaration alleges that the wife of the plaintiff, acting for him, went to the defendant for the purposes of obtaining advice and relief, and was referred to Mr. Brendl. That, in itself, implies that Mr. Brendl was clothed with some authority to act on the matter so referred. The declaration also avers that Mr. Brendl was "an authorized representative of the defendant" and that in what he did on that occasion he acted on behalf of the defendant. We think the allegation that Brendl was an authorized agent of the defendant, and that in his dealings with the wife of the plaintiff he was acting on behalf of the defendant, is sufficient to sustain the declaration on that point. Of course, if the allegations are denied, they will put in issue the question as to whether Brendl was in fact clothed with authority to make the promises alleged.

Assuming that Brendl had authority to make the promise alleged, another question, not at all clear, is whether there was any consideration therefor. Unless we take into account what transpired before the alleged agreement of July 6, 1939, it would be difficult to find a basis for holding that there was a valid consideration for any promise such as is alleged. In *Gooch* v. *Gooch,* 70 W. Va. 38, 73 S. E. 56, this Court held, "When there is by law no enforceable obligation to pay, a promise made afterwards to pay wants legal consideration and is not enforceable." Therefore, two questions arise: one, whether the relationship existing between the plaintiff and the defendant prior to July 6, 1939, created a situation furnishing the basis and consideration for an agreement to make provision for the plaintiff; and, two, whether the part performance and subsequent conduct of the defendant make the agreement enforceable. Based on the allegations of the declaration, one thing is clear. The plaintiff was injured on three separate occasions, while acting in the course of his employment with the defendant. The defendant had recognized the fact of these injuries, had

retained the plaintiff as an employee, and had given him light work until January, 1939. In accordance with a custom, as alleged, it paid to this employee wages for three months after he ceased to work. After this three-months period expired, the defendant apparently recognized some further duty or obligation toward this injured employee, because when the matter was brought to its attention in July, 1939, according to the declaration, it then promised to pay him seventy dollars per month for life, and actually paid that sum for a short period of time, after which, recognizing him as an employee, it put him at light work, and kept him employed until such time as his disabilities prevented him from continuing to work. The fact that the declaration fails to set up a contract or agreement to take care of the defendant through anything that occurred prior to July 6, 1939, does not mean that the situation alleged to exist prior to that time did not furnish consideration for any promise the defendant might feel disposed to make. The alleged fact that it was customary on the part of the defendant, to provide for injured employees, through methods akin to a pension, at something around fifty per cent of their normal wage, coupled with the further fact that the plaintiff says he had knowledge of that custom and, relying thereon, continued to work, is alone sufficient to justify us in saying that there was a consideration for any promise thereafter made. We are not impressed with the contention that the declaration can be upheld upon the theory of promissory estoppel. We do not think the declaration presents a case for the application of that doctrine. At most it avers that the defendant's representative advised the wife of the plaintiff that further compensation would not be paid the plaintiff, and that it had been refused. In the first place no application for compensation had ever been filed; then the plaintiff must have known that the matter of granting or refusing to grant compensation was not within the province of the defendant's representative; and, third, the plaintiff was not, in the circumstances, war-

ranted in waiving any right he may have had to compensation, and should not now be permitted to make such waiver the basis for a claim against the defendant. On the whole, we are disposed to adopt a liberal rule in favor of the employee, in considering the considerations which will sustain contracts between employer and employee growing out of injuries sustained in employment. In such a situation we doubt if the rigid rules of consideration applying to other types of contracts should prevail. In our opinion, enough is alleged in the declaration to justify us in holding that there was sufficient consideration for the promise alleged to have been made. We think the declaration as a whole, and on this point the entire declaration may be read and considered, shows that if a direct agreement to pay seventy dollars a month was made on the part of the defendant, on July 6, 1939, there was sufficient consideration therefor.

The ruling of the court on points 2, 3 and 4 of the demurrer to the declaration is sustained. The ruling of the court with respect to point 1 is reversed, and the declaration upheld solely upon the allegation contained therein that, on July 6, 1939, defendant, through its authorized representative, promised to pay to the plaintiff seventy dollars per month for his life, and thereafter paid said sum over a period of time, in accordance with the contract alleged.

*Ruling affirmed in part; reversed in part.*