**The AETNA CASUALTY AND SURETY COMPANY, Plaintiff-Appellee,**

v.

**L. K. COMSTOCK & COMPANY, INC., a New York Corporation, Defendant-Appellant.**

**No. 80–5368.**

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Nov. 2, 1981.

Decided Aug. 24, 1982.

Rehearing and Rehearing En Banc Denied Oct. 27, 1982.

See also, D.C. 488 F.Supp. 732.

William S. Barker, Cromer, Barker, Michaelson, Gillock & Rawlings, Las Vegas, Nev., for defendant-appellant.

Rex A. Jemison, Beckley, Singleton, Delanoy & Jamison, Las Vegas, Nev., for plaintiff-appellee.

Before NORRIS and REINHARDT, Circuit Judges, and HAUK,* District Judge.

REINHARDT, Circuit Judge.

In this action for breach of contract and indemnity, defendant Comstock appeals from a denial of summary judgment, the granting of a directed verdict, and a final judgment entered after the return of special verdicts by a jury.

### Factual Background

Stearns-Roger was the prime contractor on a project owned by Nevada Power. Comstock was given an electrical subcontract for the project, and received a purchase order and a document entitled "Subcontract General Conditions" (SGC). The purchase order set forth the subcontract wages and equipment prices and stated that work could begin upon receipt by Stearns-

---

* Honorable A. Andrew Hauk, Chief United States District Judge for the Central District of California, sitting by designation.

Roger of a certificate of insurance from Comstock. The SGC contained extensive provisions including the requirement that Comstock name Stearns-Roger and Nevada Power as additional insureds on its policies relating to the project (which coverage the certificate was to evidence), and also an indemnity provision.[1] There was a dispute at trial as to when the SGC was received by Comstock.

Two of Comstock's employees were killed by an explosion resulting from sparks igniting fuel when the employees were welding on top of a fuel tank. Because Comstock is a covered employer under the Nevada Industrial Insurance Act (the state's workers' compensation statute), the decedents' heirs were entitled to receive death benefits under workers' compensation but were barred from instituting a wrongful death action against Comstock. However, the heirs sued Nevada Power for damages resulting from the wrongful deaths. Aetna, Nevada Power's insurance company, eventually settled with the heirs for a total of $338,518.61. Aetna then brought this action for breach of contract and indemnification against Comstock, based upon the insurance and indemnification provisions of the SGC.

Comstock moved for summary judgment, arguing that Nevada's workers' compensation statute, which voids indemnification contracts which enlarge or modify the employer's liability, bars enforcement of the indemnity provision. The motion and a subsequent motion for rehearing were both denied.

Both parties submitted motions for directed verdict; some were granted and others reserved. The jury was then presented with five special verdicts. The jury found, based upon those verdicts, that (1) Nevada Power's settlement with the employees' heirs was reasonable; (2) the Purchase Order and Subcontract General Conditions formed one contract; (3) Nevada Power was negligent; (4) Comstock was negligent; and (5) Stearns-Roger, the primary contractor, waived the insurance provision of the contract.

In his Post-Verdict Opinion re Entry of Appropriate Judgment, 488 F.Supp. 732, 735–738 (D.Nev.1980); Judge Foley stated that he had improperly placed the waiver issue before the jury and withdrew it. He found that there had been no waiver, and entered judgment in Aetna's favor, requiring Comstock to indemnify Aetna for $338,-518.61.

Comstock raises three issues on appeal, only one of which we find necessary to discuss here.[2]

---

1. Paragraph 9.1 of the SGC states in relevant part:
   Subcontractor agrees to obtain and keep in force during the term of this sub-contract the below-described insurance coverage relating to the work, with Owner and Prime Contractor as named insureds ... Subcontractor will furnish Prime Contractor with certificates evidencing such insurance coverage prior to commencing any work under this sub-contract. Three copies of each certificate evidencing such coverage are to be mailed to party indicated in purchase order.
   The three types of insurance Comstock was to provide are workers' compensation coverage, automobile public liability insurance, and comprehensive public liability insurance (including contractual liability insurance to cover the indemnification provision).
   Paragraph 9.3 states:
   Indemnification. Subcontractor agrees to indemnify Owner and Prime Contractor against and hold Owner and Prime Contractor harmless from any and all claims, liabilities, obligations and causes of action of whatsoever kind or nature for injury to or death of any person (including Owner's and Prime Contractor's employees), and for damage to or destruction of property (including Owner's and Prime Contractor's property), resulting from any and all acts or omissions of Subcontractor, or of any Sub-Subcontractor's employees in connection with the performance of the work covered by this subcontract.
   Paragraph 11.5 states:
   The Subcontractor agrees to indemnify and hold harmless Owner and Prime Contractor from and against any and all claims, liabilities, obligations, and causes of action of whatsoever kind or nature as a result of the failure to comply with the above safety requirements.

2. Because of our disposition in this case, we need not reach Comstock's contentions that there was insufficient evidence for the jury's finding that the SGC was part of the electrical subcontract, and that the court erred in directing a verdict that Stearns-Roger had not waived the insurance provision.

## Discussion

■ We are asked here to decide an issue of Nevada law not previously resolved by that state's courts: whether, when an employee is killed or injured in an industrial accident, the Nevada Industrial Insurance Act (NIIA)[3] insulates the employer from liability to a third party with whom it has an express contract of indemnity.[4]

The district judge held, in denying Comstock's motion for summary judgment, that the indemnity provisions of the SGC were valid and enforceable under Nevada law. Although we accord the district judge's interpretation of state law deference in diversity cases, we nevertheless conclude that the district court misinterpreted the provisions of the NIIA.

First, we must recognize that most states have upheld an express contract of indemnity, despite the exclusive liability clauses of their workers' compensation statutes. *See* cases cited in 2A A. Larson, *Workmen's Compensation Law*, § 76.42, n.37 (1982). Larson comments that:

[The] clearest exception to the exclusive-liability clause is the third party's right to enforce an express contract in which the employer agrees to indemnify the third party for the very kind of loss that the third party has been made to pay to the employee.

*Id.*, § 76.42 at 14–630.[5] The cases employ the fiction that the indemnity action is not brought on account of the employer's liability to the employee but is based on a separate contract obligation to the third party. Therefore, the analysis continues, the employer's indemnification of the third party does not increase the employer's liability to the employee, which is fixed by statute; rather there is an independent liability based on contract.

The Court of Appeals of New Mexico has stated that this legal fiction "is no justification for excepting express contracts of indemnity" from the general exclusivity language of the New Mexico Workers' Compensation statute, reasoning that the contract claim arises solely as a result of the employee's compensation claim. *City of Artesia v. Carter*, 94 N.M. 311, 313, 610 P.2d 198, 200 (Ct.App.), *cert. denied*, 94 N.M. 628, 614 P.2d 545 (1980) (citation omitted). However, that court upheld an employer's

---

3. Nev.Rev.Stat. § 616.270 states:

1. Every employer within the provisions of this chapter, and those employers who shall accept the terms of this chapter and be governed by its provisions, as in this chapter provided, shall provide and secure compensation according to the terms, conditions and provisions of this chapter for any and all personal injuries by accident sustained by an employee arising out of and in the course of the employment.

. . . . .

3. In such cases the employer shall be relieved from other liability for recovery of damages or other compensation for such personal injury, unless by the terms of this chapter otherwise provided.

Nev.Rev.Stat. § 616.370 provides, in part:

1. The rights and remedies provided in this chapter for an employee on account of an injury by accident sustained arising out of and in the course of the employment shall be exclusive, except as otherwise provided in this chapter, of all other rights and remedies of the employee, his personal or legal representatives, dependents or next of kin, at common law or otherwise, on account of such injury.

Nev.Rev.Stat. § 616.265 states:

1. No contract of employment, insurance, relief benefit, indemnity, or any other device, shall modify, change or waive any liability created by this chapter.

. . .

3. A contract of employment, insurance, relief benefit, indemnity, or any other device, having for its purpose the waiver or modification of the terms or liability created by this chapter shall be void.

4. In *Corrao Construction Co. v. Curtis*, 94 Nev. 569, 584 P.2d 1303 (1978), this precise issue was presented to the Nevada Supreme Court. Although the court held that it did not need to decide the issue, because the third party was found· at trial not to have been negligent, the opinion is enlightening for reasons we discuss *infra*.

5. Larson cautions, however, that a careful examination must be made of the specific provisions of the workers' compensation statute involved. It is the difference between the specific provisions of the Nevada statute and those of the states whose statutes are cited by Larson that is determinative here.

agreement to indemnify a third party, relying on the right to contract. The court found that there was a strong public policy favoring the right to contract and that that policy was consistent with the public policy, limiting an employer's liability, expressed in the workers' compensation statute. The court said that, notwithstanding the fact that indemnity agreements are permitted, the policy of the workers' compensation statute "remains intact," adding, "all that is involved is the employer's departure from the policy. If the employer desires to voluntarily relinquish his statutory protection, he may do so." *Id.* at 314, 610 P.2d at 201.

The New Mexico statute, unlike the Nevada statute, does not contain a provision expressly prohibiting indemnification agreements. Indeed, our research has not revealed a provision similar to Nevada's in any of the states whose decisions are cited by Larson.[6] Were the NIIA to include only the exclusivity language found in Nev.Rev. Stat. §§ 616.270 and 616.370, we might be inclined to reach the result reached in New Mexico and other states with similar workers' compensation statutes, and hold that an employer has the right to contract away the benefits of the NIIA by entering into indemnification agreements with third parties. Nev.Rev.Stat. § 616.265, however, expressly voids contracts of indemnity having for their purpose the waiver or modification of the terms or liability created by the NIIA. Thus, the NIIA expressly evidences Nevada's general determination that the right to contract be subordinated to the public policy expressed in its workers' compensation statute, and its specific determination that employers be prohibited from entering into indemnification agreements. Accordingly, the right to contract argument does not provide a rationale for upholding the indemnity agreement before us. Nor do we find any other basis for ignoring the Nevada statute's express prohibition against indemnification agreements.

In cases involving an employer's obligation to indemnify a manufacturer for damages sustained by an employee, this court, in *Santisteven v. Dow Chemical Co.*, 506 F.2d 1216 (9th Cir. 1974), and the Nevada Supreme Court, in *Outboard Marine Corp. v. Schupbach*, 93 Nev. 158, 561 P.2d 450 (1977), both held that, because of the express prohibitions of Nev.Rev.Stat. § 616.-265, an implied indemnity does not run to a third party.

In *Santisteven* we recognized that, as of the time of that decision, there were no prior Nevada cases on the issue. We held, however, that where "there is no particularized obligation running" from the employer to the third party, the Nevada courts would follow the majority view "that third party suits are precluded by statutory exclusivity provisions." 506 F.2d at 1219. We also noted the provision of the Nevada statute which expressly bars indemnity agreements. *Santisteven* involved a manufacturer who had supplied a defective product that injured the employee. When the employee sued the manufacturer, the latter sought indemnification from the employer.

A similar factual situation was presented in *Outboard Marine.* There the Nevada Supreme Court, relying on *Santisteven*, held that the NIIA "not only insulates employers from liability to employees, but also from liability by way of indemnity to a third party ... who supplied a defective product." 561 P.2d at 454. The court noted that *Santisteven* had not only relied upon the exclusivity clause (Nev.Rev.Stat. § 616.270), but also upon "NRS 616.265 which voids a contract of indemnity having for its purpose the waiver or modification of the terms or liability created by the Act." *Id.* Although an express contract of indemnity was not present in *Outboard Marine*,

---

6. Our dissenting colleague insists that a Washington statute, Wash.Rev.Code § 51.04.060, is similar to the Nevada statute. That is simply not correct. The Nevada statute expressly voids "indemnity" agreements. The Washington statute does not. Nor does any other statute cited by Professor Larson or our dissenting colleague. No matter how impressive the views of the learned professor who authored the black letter law, we are not free to adopt his general rule, but are compelled to apply the Nevada statute as it was enacted by that state's legislature. *Erie R. R. v. Tompkins*, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938).

the court stated that "if such a contract is voided by NRS 616.265, it is certain that there exists no room for implied indemnity, absent an independent duty owing from the employer . . . to the third party." *Id.* The "if" was not intended to question the fact that express contracts of indemnity are barred, but rather to introduce an *a fortiori* proposition.

In *Corrao Construction Co. v. Curtis*, 94 Nev. 569, 584 P.2d 1303 (1978), the Nevada Supreme Court was asked to decide the precise question whether express indemnification agreements between employers and third parties are prohibited by the NIIA. Corrao, the employer, had agreed in writing to indemnify the owners of the property "from all claims, damages, losses and expenses, including attorneys' fees, arising out of the work if caused in whole or in part by the negligence of the employer." 584 P.2d at 1304. An injured employee sued the owners for damages. The owners, in turn, filed a third party complaint against Corrao for indemnification, basing their action on the indemnity agreement.

The court stated that:

NRS 616.265 voids a contract of indemnity which changes or modifies the liability created by the Act. An employee may not sue his participating employer for injuries by accident arising out of and in the course of his employment. NRS 616.-270. An employee, of course, may sue a third party for that party's negligence, and obtain damages. The compensation received by him under the [NIIA] is to be deducted from the amount of damages so recovered. NRS 616.560; *McDowell Construction Supply Corp. v. Williams*, 90 Nev. 75, 518 P.2d 604 (1974).

*Id.*

The *Corrao* court then said, citing *Outboard Marine*:

[I]t would appear, therefore, that an indemnity agreement which changes or enlarges the liability of the employer by imposing a liability to its employee for damages caused by the negligence of a third party would be void by reason of the express mandate of NRS 616.265." *Id.* The *Corrao* court found it unnecessary, however, to rule expressly on the validity of the indemnity agreement because the third party owners were found free of fault, and there was, therefore, no liability for the employer to indemnify against. *Id.*

It is clear not only from the earlier cases, but also from the context of the *Corrao* statement, that when the Nevada Supreme Court said, "an indemnity agreement which changes or enlarges the liability of the employer . . . would be void," it was referring to indemnity agreements that require the employer to indemnify third parties. It is equally clear that the court meant the term "liability to an employee" to include an indirect liability resulting from the employer's reimbursement of amounts paid by a third party to an employee. The rationale underlying this view is that an indemnity agreement requires an employer to pay indirectly, through the conduit of a third party, the very damages which the statute not only relieves him from paying but also expressly prohibits him from agreeing to pay.

There would be no merit to any suggestion that the only contracts prohibited by Nev.Rev.Stat. § 616.265 are those between the employer and the employee. Such agreements would already be unenforceable under the more general exclusive remedy provisions of the NIIA. Moreover, the *Santisteven* and *Outboard Marine* decisions both hold that section 616.265 applies not only to an employer's direct indemnification of an employee for injuries sustained by the latter, but also to an employer's indemnification of a third party who pays damages to that injured employee. Read together, *Santisteven, Outboard Marine,* and *Corrao* leave no doubt that indemnification agreements which require employers to reimburse or hold harmless third parties for damages that those third parties pay or owe to the employers' employees, or their representatives, as a result of industrial accidents, are subject to the prohibition against

indemnification agreements contained in the Nevada statute.[7]

In *Santisteven* and *Outboard Marine*, the courts were not faced with the question whether an exception to the statutory prohibition exists where there is a "particularized obligation" or "independent duty" owed by the employer to the third party. The *Corrao* court was. Although it ultimately found it unnecessary to decide the question, the Nevada Supreme Court's statements in *Corrao* strongly suggest that the express and all-inclusive prohibition of the NIIA is applicable notwithstanding the existence of any "particularized obligation" or "independent duty," and that the court would not create an implied exception to the plain statutory language prohibiting indemnity agreements. We believe that the *Corrao* statement, read in context, properly reflects the law of Nevada. We believe it also clearly indicates the view the Nevada Supreme Court would adopt.[8]

As Larson noted, the "clearest" form of "particularized obligation" or "independent duty" exception is the written indemnification agreement under which the employer promises to reimburse, or hold harmless, a third party. 2A A. Larson, *Workmen's Compensation Law*, § 76.42 at 14–630. However, there is nothing on the face of the statute suggesting that *any* category of indemnification agreement is excluded from the all-inclusive prohibition. In fact, the

statute quite plainly provides to the contrary. We should note, further, that we have not been advised of any legislative history which might convince us that the Nevada legislature did not mean to say what it did, or that it intended to permit the courts to create so significant and substantial an exception to the statutory rule.

The language of the NIIA is strong and unequivocal. The Act sets forth exclusive remedies. Nev.Rev.Stat. § 616.370. It relieves the employer of all other liability. Nev.Rev.Stat. § 616.270. It expressly prohibits the use of a contract of indemnity to vary in any way the liability as set forth in the statute. Nev.Rev.Stat. § 616.265–1. It then expressly declares any indemnity agreement or other device intended to accomplish this purpose void. Nev.Rev.Stat. § 616.265–2. The Act contains no exceptions. Under these circumstances, we do not think it would be proper for us to create one here.

■ We hold the contract before us void to the extent that it indemnifies a third party against damages paid to the employer's employees as the result of an industrial accident.[9] Furthermore, we hold that to the extent the contract provides for insurance to a third party, protecting it against damages suffered by an employer's employee as a result of an industrial accident, it is similarly prohibited by Nev.Rev.Stat. § 616.265. The provision of insurance by

**7.** The dissent rests on the premise that an *express* indemnification of a third party is somehow excluded from the scope of the statute. Our colleague, however, does not deny that an *implied* indemnification of a third party is barred by that statute. He merely dismisses the cases applying the Nevada statute to third parties as "not controlling here." *Post* at 1275. Since the dissenting opinion fails even to mention the undisputed rule that the Nevada statute bars *implied* indemnification of third parties, it of course offers no explanation as to how a statute that bars *all* indemnification agreements can be read as barring only implied agreements and permitting express agreements. We think it clear that no such explanation could be offered.

**8.** We rest our decision on the specific language of the Nevada statute and the several cases that have construed its relevant provisions and applied them to third party indemnification. The dissent, though purporting to predict what

the Nevada Supreme Court would do, summarily dismisses as "'unnecessary' dictum," *post* at 1275, the clear view of that court on the precise question before us; ignores completely all the other cases, whether in this court or the Nevada Supreme Court, that discuss the Nevada statute, pausing only to term them "not controlling here," *post* at 1275; and cites no Nevada case, opinion of this court, legislative history, or commentary on Nevada law in support of its "prediction."

**9.** To the extent that the insurance and indemnity agreement may provide for the payment of attorney's fees, that provision is valid, as it does not result in an indirect payment of damages to the employee, *see Corrao*, 584 P.2d at 1305. The agreement might also come into play in the event of a death or injury to a person other than an employee of Comstock.

the employer for the third party's benefit accomplishes the same purpose as an indemnity agreement; for that reason, insurance agreements, like indemnity agreements, are expressly declared to be void by the statute. Nev.Rev.Stat. § 616.265.

## Conclusion

The Nevada Industrial Insurance Act prohibits enforcement of (1) an indemnity agreement, and (2) an insurance agreement, by a third party against an employer of an employee who is killed or injured as the result of an industrial accident covered by the Nevada Industrial Insurance Act. Under the Act, such agreements are void. The judgment below is reversed and remanded for further proceedings consistent with this opinion.

NORRIS, Circuit Judge, dissenting:

We seldom encounter a case which may be resolved on the basis of black letter law. Here we are presented with just such a case. Although state worker's compensation schemes typically provide that an employer's liability under the worker's compensation system is an exclusive liability, "[t]he clearest exception to the exclusive-liability clause is the third party's right to enforce an express contract in which the employer agrees to indemnify the third party for the very kind of loss that the third party has been made to pay to the employee." 2A A. Larson, *Workmen's Compensation Law*, § 76.42 at 14–630 to 14–631 (1982). Apparently underestimating the force of the black letter rule, the majority today voids an express contract between an employer and a third party on the ground that the contract is barred by the Nevada Industrial Insurance Act (NIIA).

With but a single exception, all federal and state courts adhere to the black letter rule and recognize that an express indemnity contract is an exception to an employer's otherwise exclusive liability under a state worker's compensation scheme. *See id.* § 76.42 at 14.631 n.37 (citing cases). The single exception is Alabama, whose courts stand alone in their refusal to follow the mainstream of worker's compensation decisions involving express indemnity contracts. *Id.* § 76.43 at 14–639 to 14–641. I would adhere to the black letter rule because neither the structure, the language, nor the policies of the Nevada worker's compensation scheme provide any basis for refusing to enforce an express indemnity contract between an employer and a third party.

The structure of the NIIA makes it clear that an employer's liability to third parties is independent from its liability to its employees. That independence is not a "legal fiction" as the majority suggests. The NIIA's scheme comprehensively describes the legal relationship between employer and employee with respect to work-related injuries, creating three types of liability running from the employer to the employee.[1] Since the NIIA creates no liability running from an employer to third parties, an employer's contractual obligation to indemnify a third party is independent of any obligations imposed by the NIIA.

The language of the NIIA makes an employer's liability to an employee exclusive in two ways. First, Nev.Rev.Stat. §§ 616.-270[2] and 616.370[3] contain general language

---

1. The three types of liability running from the employer to the employee are the employer's obligation to pay compensation, Nev.Rev.Stat. § 616.270; the employer's duty to render all necessary first aid, Nev.Rev.Stat. § 616.340; and the common law liability created by an employer's failure to comply with the provisions of the NIIA, Nev.Rev.Stat. § 616.375.

2. Nev.Rev.Stat. § 616.270 provides in part:
   1. Every employer within the provisions of this chapter, and those employers who shall accept the terms of this chapter and be governed by its provisions, as in this chapter provided, shall provide and secure compensation according to the terms, conditions and

provisions of this chapter for any and all personal injuries by accident sustained by an employee arising out of and in the course of the employment.
   . . .
   3. In such cases the employer shall be relieved from other liability for recovery of damages or other compensation for such personal injury, unless by the terms of this chapter otherwise provided.

3. Nev.Rev.Stat. § 616.370 provides in part:
   1. The rights and remedies provided in this chapter for an employee on account of any injury by accident sustained arising out of and in the course of the employment shall be

limiting the liability from an employer to an injured employee to the liability created by the NIIA. The majority concedes that an express indemnity contract might be an exception to the general exclusivity language found in sections 616.270 and 616.370. The majority instead relies heavily on the more explicit language of Nev.Rev.Stat. § 616.265, which prohibits indemnity contracts which would "modify, change or waive any liability created by this chapter [the NIIA]." [4] This reliance is misplaced. Section 616.265 prohibits indemnity contracts only if they affect rights created by the NIIA. Since an express indemnity contract between an employer and a third party creates a contractual liability to a third party, rather than waiving or modifying any liability created by the NIIA, such an agreement is not barred by the language of section 616.265.

The majority asserts that the express language of section 616.265 bars voluntary indemnity contracts between employers and third parties because the Nevada statute is unique among state worker's compensation statutes in its specific prohibition of indemnity contracts. The Nevada statute, however, is not unique. Wash.Rev.Code § 51.-04.060 expressly prohibits an employer from entering into *any* contract to "exempt himself from the burdens or to waive the benefits [of the Washington worker's compensation scheme]." [5] Washington courts have nonetheless held enforceable express indemnity contracts between employers and third parties, reasoning that the worker's compensation scheme, which regulates employer-employee relationships, does not void a voluntary contractual relationship separate from the employer-employee relationship. *Redford v. City of Seattle*, 94 Wash.2d 198, 203–04, 615 P.2d 1285, 1288 (1980).

The Washington Supreme Court further reasoned that express contracts of indemnity do not undermine the policy of the Washington Industrial Insurance Act, to insure compensation for injured workers and their families. *Id.* The policy of assuring benefits to injured employees and their families is common to all worker's compensation schemes. [6] *See, e.g., Grady v. Appalachian Electric Power Co.*, 126 W.Va. 546, 29 S.E.2d 878, 881 (1944) (protection of worker's right to compensation for injury is primary policy of worker's compensation scheme). Although the NIIA does not contain an express statement of purpose, there is no evidence that the Nevada's worker's compensation scheme is based on a policy different from that underlying other worker's compensation schemes.

The majority attempts to distinguish the worker's compensation statutes of the states which are not as explicit as the Washington and Nevada statutes in prohibiting contracts of indemnity between employers and employees. Many worker's compensation statutes nonetheless contain strong language proclaiming the exclusivity of worker's compensation rights and remedies, and are thus susceptible to the inter-

exclusive, except as otherwise provided in this chapter, of all other rights and remedies of the employee, his personal or legal representatives, dependents or next of kin, at common law or otherwise, on account of such injury.

4. Nev.Rev.Stat. § 616.265 states:
   1. No contract of employment, insurance, relief benefit, indemnity, or any other device, shall modify, change or waive any liability created by this chapter.
   2. A contract of employment, insurance, relief benefit, indemnity, or any other device, having for its purpose the waiver or modification of the terms or liability created by this chapter shall be void.

5. Wash.Rev.Code § 51.04.060 states: "No employer or workman shall exempt himself from the burden or waive the benefits of this title by

any contract, agreement, rule or regulation, and any such contract, agreement, rule or regulation shall be pro tanto void." *See also* W.Va. Stat. § 23–2–27 (same).

6. "The ultimate social philosophy behind compensation liability is belief in the wisdom of providing, in the most efficient, most dignified, and most certain form, financial and medical benefits for the victims of work-connected injuries which an enlightened community would feel obliged to provide in any case in some less satisfactory form, and of allocating the burden of these payments to the most appropriate source of payment, the consumer of the product." 1 A. Larson, *Workmen's Compensation Law*, § 2.20 at 5 (1982).

pretation that indemnity agreements are prohibited. For example, New Mexico Rev. Stat. § 52–1–8 limits an employer's liability with the following language: "[A]ll causes of action, actions at law, suits in equity and proceedings whatever, and all statutory and common-law rights and remedies ... accruing to any and all persons whomsoever, are hereby abolished except as provided in the Workmen's Compensation Act." Despite this strong language, the New Mexico Court of Appeals held enforceable an express contract of indemnity between an employer and a third party. *City of Artesia v. Carter*, 94 N.M. 311, 314, 610 P.2d 198, 201 (1980).

The majority's attempt to distinguish *Artesia* is unworkable because the policy issues facing us here are precisely the ones the *Artesia* court confronted:

> Enforcing express contracts of indemnity is no more than enforcing the loss distribution agreed to by the contracting parties.... This arrangement to distribute the loss does not offend any policy concerned with securing the payment of workmen's compensation; the compensation payable is not affected by the indemnity agreement. This arrangement does not depart from the policy of limiting employer's liability; that policy remains intact.... If the employer desires to voluntarily relinquish his statutory protection, he may do so.

*Id.* As the policy considerations are the same no matter how explicitly a state worker's compensation statute bars indemnity contracts between employers and employees, I conclude that the majority has no principled basis for escaping the force of the black letter rule.

While ignoring the black letter rule and relevant policy considerations, the majority relies on the Nevada Supreme Court's "unnecessary" dictum in *Corrao Construction Co. v. Curtis*, 94 Nev. 569, 584 P.2d 1303 (1978). *See* majority opinion at 3790.[7] Be-

cause the case at bar is a diversity action, this court must look to state law for the appropriate rule of decision. *Erie R. Co. v. Tompkins*, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938). Where the applicable state law is unresolved, however, this court has a duty to "use its own best judgment in predicting how the state's highest court would decide the case." *Takahashi v. Loomis Armored Car Service*, 625 F.2d 314, 316 (9th Cir. 1980). The exercise of our best judgment does not require us to follow dictum of the state court. It is my view that if the Nevada Supreme Court were to address the issue squarely, it would look to the well-reasoned decisions of other jurisdictions and hold that the Nevada worker's compensation scheme does not void express indemnity contracts between an employer and a third party.

I see no reason for not enforcing the indemnity contract between Comstock and Nevada Power. Indemnification agreements do not deprive injured workers of the compensation guaranteed them by worker's compensation schemes. Because the NIIA does not alter an employee's right to sue third parties, an employer's agreement to indemnify a third party is a practical and desirable response to the everyday problem of risk allocation in business dealings.

In sum, neither the structure of the Nevada worker's compensation scheme, the statutory language, nor its policies support the majority's conclusion that section 616.-265 voids the express contract of indemnity here. Indeed, the practical aspects of this case suggest that leaving parties free to negotiate the allocation of risk of loss resulting from work-related injuries is economically sound, socially desirable, and consistent with the goal of insuring compensation for injured workers.

I dissent.

---

7. The majority discusses two other cases interpreting an employer's obligation under the NIIA to indemnify a third party for damages sustained by an employee. *See Santisteven v. Dow Chemical Co.*, 506 F.2d 1216 (9th Cir. 1974); *Outboard Marine Corp. v. Schupbach*, 93 Nev. 158, 561 P.2d 450 (1977). Since *Santisteven* and *Outboard* involved implied, rather than express, indemnity contracts, those cases are not controlling here.